24278

The STATE, Respondent v. Donald KELLEY, Appellant.

(460 S.E. (2d) 368)

Supreme Court

174

*Chief Atty. Daniel Stacy* and *Asst. Appellate Defender Lisa T. Gregory,* both of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr., Asst. Atty. Gen. Rakale Buchanan Smith,* Columbia, and *Sol. Wade S. Kolb, Jr.,* Sumter, *for respondent.*

Heard May 4, 1995.

Decided July 24, 1995.

TOAL, Justice:

Donald Kelley was convicted of murder and sentenced to life in prison. We affirm.

## FACTS

On August 2, 1992, Barbara Myers found her niece, Christine Peterson, dead in the living room of Myers' home. At

least one hundred and sixteen blows covered Peterson's body, including bruises, abrasions, and lacerations. Donald Kelley, Peterson's boyfriend, was the only person in the home when Myers found her niece.

Kelly was indicted and tried for murder. He was convicted of murder and sentenced to life. This appeal follows.

## LAW/ANALYSIS

### 1. Batson

Kelly first claims the Solicitor's explanation for striking two black potential jurors, Joe Joyce and Marion Clavon, was pretextual. We disagree.

The State exercised three of its peremptory challenges to strike three black jurors and one of its peremptory challenges to strike one white juror. The trial judge conducted a *Batson* hearing upon defense counsel's motion. The Solicitor explained she struck Joe Joyce and Marion Clavon because defense counsel previously had represented these jurors. The Solicitor noted she did not strike a white male whom defense counsel had represented. The Solicitor explained when this juror was called she only had one strike left. At that time, there were other potential jurors who had prior records whom she wanted to save her last strike for. She didn't "want to use any last strike on somebody just because of representation of Mr. Jennings." Additionally, the Solicitor noted she struck a white female defense counsel had represented.

In a *Batson*[1] hearing, the solicitor must present a racially neutral explanation for the challenges. *State v. Johnson*, 302 S.C. 243, 395 S.E. (2d) 167 (1990). Whether a proffered reason is racially neutral is to be determined by examining the totality of the facts and circumstances in the record surrounding the strike, including the credibility and demeanor of the individual called upon to explain her strike. *Riddle v. State*, 314 S.C. 1, 443 S.E. (2d) 557 (citations omitted), *cert. denied*, — U.S. —, 115 S.Ct. 518, 130 L.Ed. (2d) 424 (1994). The defendant has the burden to prove the solicitor's allegedly neutral reasons are pretext. *Johnson, supra.* The defendant can demonstrate the solicitor created a

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed (2d) 69 (1986).

pretext for purposeful discrimination by applying her allegedly racially neutral standard in a discriminatory manner. *State v. Oglesby,* 298 S.C. 279, 379 S.E. (2d) 891 (1989).

Here, the Solicitor stated she struck two black jurors because defense counsel had represented these jurors.

The Solicitor also explained that she struck one white juror for the same reason. Although the Solicitor did not strike an additional white juror whom defense counsel had represented, she provided a racially neutral reason that at the time this juror was called she was saving her last strike to use on other potential jurors who had a criminal record. Kelly has not shown the Solicitor's race-neutral explanation for striking Joe Joyce and Marion Clavon was a pretext. *Johnson, supra.* Accordingly, under the facts and circumstances in the record, we affirm the trial judge's finding that *Batson* was not violated.

2. *Admission of video, pictures and visual aids*

Kelly next argues the trial judge erred in allowing into evidence photographs depicting the bloodstains on the victim and the surrounding area, a video that panned the crime scene, and charts the pathologists used in describing numerous wounds to the victim's body. We disagree.

It is well settled that evidence should be excluded when its probative value is outweighed by its prejudicial effect. *State v. Alexander,* 303 S.C. 377, 410 S.E. (2d) 146 (1991). A trial judge has considerable latitude in ruling on the admissibility of evidence and his rulings will not be disturbed absent a showing of probable prejudice. *State v. Kornahrens,* 290 S.C. 281, 350 S.E. (2d) 180 (1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed. (2d) 781 (1987). The determination of the relevancy and materiality of a photograph is left to the sound discretion of the trial judge. *State v. Todd,* 290 S.C. 212, 349 S.E. (2d) 339 (1986).

The pathologist's charts were hand-drawn outlines of the victim's face and body showing numerous wounds in either blue ink or red ink. The pathologist testified that the cause of death was a closed head injury due to massive beating with additional massive beating as a contributive factor. The charts corroborated the pathologist's testimony. *See Todd, supra* (no abuse of discretion if the offered photograph serves to corroborate testimony).

The photographs and video show the crime scene. Specifically, two photographs are of the victim's nude body lyng on the living room floor with her face and body visibly swollen from the beating. Additionally, the photographs show blood smeared on the walls and floor. The video shows the entire crime scene. These photographs and video were relevant to establish the crime scene. *State v. Campbell,* 259 S.C. 339, 191 S.E. (2d) 770 (1972).

Additionally, Kelley's main defense was that he was drunk at the time of the killing and, therefore, should only be convicted of voluntary manslaughter. These charts, photographs, and video also were relevant to establish malice.

Kelly argues these items were unfairly prejudicial and, therefore, should have been excluded. To constitute unfair prejudice, the photographs must create a "tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Alexander* at 377, 401 S.E. (2d) at 149. The charts, photographs, and video here depicted the excess nature of the killing. The relevance of these items and their probative value on the issue of malice was great enough to negate the risk of the jury's basing its decision on an improper passion. *See State v. Franklin,* — S.C. —, 456 S.E. (2d) 357 (1995). We affirm.

### 2. *Res gestae*

At trial, Wilson Bradley, one of the State's witnesses, testified that the night before the victim died, the victim told the witness she needed help because Kelley had kicked her in the chest. Kelley objected on the basis of hearsay. The trial judge allowed the testimony under the *res gestae* exception to the hearsay rule.

To qualify as part of the *res gestae* exception to hearsay, a statement must be substantially contemporaneous with the litigated transaction and be the spontaneous utterance of the mind while under the active immediate influence of the event. *State v. Cox,* 274 S.C. 624, 266 S.E. (2d) 784 (1980). The rationale behind this exception lies in the special reliability accorded to a statement uttered in spontaneous excitement which suspends the declarant's powers of reflection and fabrication. *Id.*

The victim told Bradley of the beating the evening before her death. Accordingly, this statement was not made substantially contemporaneously with the litigated transaction and, therefore, the trial judge erred in admitting the statement.

When guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this Court will not set aside a conviction for insubstantial errors not affecting the result. *State v. Livingston*, 282 S.C. 1, 317 S.E. (2d) 129 (1984). Having found error, this Court must ask what other evidence was considered besides the evidence entered in error. *State v. Parker*, 315 S.C. 230, 433 S.E. (2d) 831 (1993).

Barbara Meyers testified she found Kelley in the house when she first discovered the victim's body on the floor. Kelley told Meyers he didn't know what was wrong with the victim other than the fact that she wasn't talking to him. Kelley then dragged the victim's body in the living room. Kelley testified he slapped the victim around just prior to her death. A neighbor observed Kelley slap the victim the morning of her death as they walked down the street. Bradley also stated that before the victim and Kelley left Bradley's house the morning of victim's death, he heard Kelley slap the victim.

The pathologist testified the victim had been beaten by at least 116 blows. The arresting police officer testified he accosted Kelley as Kelley was climbing out of a back bedroom window at the crime scene. Forensic evidence established blood consistent with the victim's was found on Kelley as well as his clothing. Additionally, Kelley's bloody palm print was found on the hallway wall. The evidence of guilt is overwhelming without any reference to the hearsay evidence improperly admitted and, therefore, the error is harmless.

Accordingly for the reasons stated the trial court is AFFIRMED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.