492 S.E.2d 822

The STATE, Respondent

v.

Odell GAGUM, Jr., Appellant.

No. 2737.

Court of Appeals of South Carolina.

Heard Sept. 9, 1997.

Decided Oct. 20, 1997.

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney Salley W. Elliott, Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor David P. Schwacke, Charleston, for respondent.

HOWELL, Chief Judge:

Odell Gagum, Jr. appeals from his conviction for strong-arm robbery, arising from the theft of a purse. Counsel for Gagum initially filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that there were no meritorious grounds for appeal and requesting permission to withdraw from further representation. This Court denied the request to withdraw and directed the parties to file additional briefs. After reviewing the record and the briefs prepared by the parties, we affirm.

## I.

Shortly after 9:00 p.m. on March 15, 1995, Kathryn Lindenmayer was returning to her apartment in downtown Charleston after grocery shopping. As she walked down the sidewalk with her groceries in her arms, a man she identified as Gagum approached and stopped her, asking for directions to President Street. After Lindenmayer gave him the directions, he asked for directions to other places and began telling her a story about being a donor at a cancer center and needing bus fare. Lindenmayer told Gagum she had no money and began moving away from him. After walking a few steps towards her apartment, Lindenmayer looked over her shoulder and noticed that Gagum, who had been walking in the opposite direction, had turned around and was walking back towards her. Lindenmayer then hurried towards her apartment door, but Gagum caught up with her. Gagum told Lindenmayer, "you're going to give me your purse," and grabbed her arm. According to Lindenmayer, Gagum "began to stare at me very—in a frightening manner, in an unkind manner, as though he had intent of doing me harm." Gagum pulled on her arm repeatedly and pulled her groceries out of her hand, throwing them on the ground. Gagum continued pulling on Lindenmayer's arm and purse for approximately 15–20 seconds, until Lindenmayer finally let go of her purse. After the struggle, Gagum calmly walked down the street.

Lindenmayer ran into her apartment and told Nevette Steele, her boyfriend, that her purse had been stolen. She pointed Steele in the direction that Gagum had gone and then went into her apartment and called 911. As Steele and a friend ran down the street in Gagum's direction, Gagum began to run. Steele then saw Lindenmayer's purse in Gagum's hand. Gagum ran into a fenced parking lot where Steele and his friend cornered him. Gagum threw a punch at Steele, who then threw Gagum on the ground and held him down.[1] Steele testified that after his friend took Lindenmayer's purse away from Gagum, Gagum asked his friend to let him go, and offered them "dope" if they would let him go. The police arrived on the scene a few minutes later. Lindenmayer

---

1. At the conclusion of the trial, Gagum pleaded guilty to a charge of simple assault arising out of the confrontation with Steele.

arrived at the scene with another police officer shortly thereafter and she identified Gagum as the man who stole her purse.

In his opening and closing statements, counsel for Gagum conceded that Gagum stole Lindenmayer's purse, but argued that the crime he committed was purse-snatching, not strong-arm robbery. The jury found Gagum guilty of strong-arm robbery, and the trial court sentenced him to six years imprisonment.

## II.

Before the trial began, Gagum's attorney moved to exclude the testimony that Gagum offered drugs to Steele and his friend if they would let him go, as well as the testimony about Gagum's assault on Steele. Gagum argued the testimony was inadmissible because it involved prior bad acts that did not fit within one of the exceptions set forth in *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), and that the prejudicial impact outweighed its probative value. The trial court admitted the evidence, holding it was part of the *res gestae* of the crime.

Evidence of other crimes committed by a defendant is generally admissible if the other crimes were part of the *res gestae* of the crime for which the defendant was being tried. Under this theory, evidence of other crimes is admissible when the evidence

"furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other.' "

*State v. Adams*, 322 S.C. 114, 122, 470 S.E.2d 366, 370–71 (1996) (quoting *United States v. Masters*, 622 F.2d 83 (4th

Cir.1980)); *accord State v. Hough,* 325 S.C. 77, 480 S.E.2d 77 (1997); *State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996).[2]

▪▪▪▪ As to the evidence of Gagum's assault of Steele, we conclude that Gagum failed to preserve the issue for appeal. As noted above, Gagum moved *in limine* to suppress the disputed evidence. Because a ruling in an *in limine* motion is

---

**2.** Under the Federal Rules of Evidence, other crimes that form a part of the *res gestae* of the crime for which the defendant is being tried are generally admitted under Rule 404(b), *see, e.g., Masters,* 622 F.2d at 86–87, which provides an illustrative but not exclusive list of purposes for which such evidence may be admitted. *Id.* at 86 (Fed.R.Evid. 404(b)'s list of circumstances when evidence of prior crimes may be admissible "is merely illustrative and not exclusionary."). South Carolina's version of Rule 404(b), however, allows the admission of evidence of prior crimes or bad acts *only* if the evidence shows "motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Thus, Rule 404(b) codifies the limitations on the admissibility of evidence of prior bad acts set forth in *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

While there are times when evidence may be admissible under *Lyle* and Rule 404(b) and the *res gestae* exception, the *res gestae* exception is properly viewed as independent of *Lyle*—that is, some evidence that would be inadmissible under *Lyle* and Rule 404(b) would be admissible as part of the *res gestae. See State v. Bolden,* 303 S.C. 41, 43, 398 S.E.2d 494, 495, n. 1 (1990) (Noting that *res gestae* "does not fit squarely within any of the five categories identified in *State v. Lyle.");* *see also State v. Smith,* 309 S.C. 442, 451, 424 S.E.2d 496, 501 (1992) (Toal, J., dissenting) (Although there is overlap between *Lyle* and the *res gestae* theory, the *"res gestae* theory is a separate and independent method by which other evidence of criminal acts can be admitted into evidence."). Thus, the question is whether, given Rule 404(b)'s strict limitation of when evidence of other crimes is admissible, the doctrine of *res gestae* remains viable under the South Carolina Rules of Evidence. Our Supreme Court has addressed the doctrine of *res gestae* at least four times since the effective date of the Rules of Evidence; however, these cases do not address the effect of the adoption of the Rules on the viability of the doctrine. *See State v. Crim,* 489 S.E.2d 478 (S.C.1997); *State v. Hough,* 325 S.C. 88, 480 S.E.2d 77(1997); *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996); *State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996). Moreover, it is unclear from the text of these cases whether they were *tried* before or after the effective date of the Rules. Nonetheless, because Gagum never argued at trial that *res gestae* did not survive the adoption of the Rules of Evidence, we do not resolve the question. *See, e.g., State v. Bailey,* 298 S.C. 1, 377 S.E.2d 581 (1989) (party cannot argue one ground for objection at trial and another on appeal); *State v. Bostick,* 307 S.C. 226, 228, 414 S.E.2d 175, 176, n. 1 (Ct.App.1992) ("A specific objection to evidence is required to preserve the issue of admissibility for review.").

not final, the losing party must renew his objection at trial when the evidence is presented in order to preserve the issue for appeal. *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993); *State v. Mueller,* 319 S.C. 266, 460 S.E.2d 409 (Ct.App. 1995). In this case, however, Gagum did not renew his objection until after Steele testified that Gagum punched him and struggled with him. Therefore, by failing to timely object, Gagum waived his right to challenge on appeal the admissibility of the testimony regarding the assault of Steele.

As to the admissibility of Gagum's offer of "dope," Gagum's objection at trial was timely; accordingly, the issue is preserved for appeal. Nonetheless, we conclude that the trial court did not err by admitting the evidence.

■ Steele testified that he began running down the street almost immediately after the robbery and that he apprehended Gagum within minutes. Steele testified that he and his friend brought Gagum to the ground, took Lindenmayer's purse from him, and held him down until the police arrived. It was during this time that Gagum offered to give Steele drugs if he would let him go. Under these circumstances, it is clear that the offering of the drugs "was so intimately connected with the crime charged that its introduction was appropriate to complete the story of the crime." *State v. Bolden,* 303 S.C. 41, 43, 398 S.E.2d 494, 495 (1990). Thus, the evidence was part of the *res gestae*[3] of the crime with which Gagum was charged, and the trial court properly refused to "unnecessarily fragmentize the State's case" by excluding the testimony. *Adams,* 322 S.C. at 122, 470 S.E.2d at 371.

---

3. The phrase *"res gestae"* as used in the context of this case should not be confused with the former *res gestae* exception to the hearsay rule. Prior to the adoption of the Rules of Evidence, a statement was admissible under the *res gestae* exception to the hearsay rule if the statement was substantially contemporaneous with the litigated transaction and was the spontaneous utterance of the mind while under the active, immediate influence of the event. *See, e.g., State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995); *State v. Blackburn,* 271 S.C. 324, 247 S.E.2d 334 (1978). Thus, the *res gestae* exception to the hearsay rule is not related to the *res gestae* question at issue in this case—that is, whether other bad acts committed by Gagum were properly admitted in his trial. That the same, less-than-precise name developed for two unrelated evidentiary inquiries is unfortunate.

566

Accordingly, for the foregoing reasons, the decision of the trial court is hereby

AFFIRMED.

HEARN and STILWELL, JJ., concur.