585 S.E.2d 523

**The STATE, Respondent,**

**v.**

**Andre TUFTS, Appellant.**

**No. 3647.**

Court of Appeals of South Carolina.

Heard April 16, 2003.

Decided June 2, 2003.

Rehearing Denied Aug. 27, 2003.

494

Assistant Appellate Defender Tara S. Taggart, of Columbia; for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Harold M. Coombs, Jr., of Columbia; and Solicitor Barbara R. Morgan, of Aiken; for Respondent.

HEARN, C.J.:

Andre D. Tufts appeals his conviction for criminal sexual conduct in the third degree, asserting the trial judge erred in admitting improper evidence of his character. We affirm.

## I. FACTS/PROCEDURAL HISTORY

Tufts was charged with CSC third as a result of an incident that allegedly occurred at Aiken Region Medical Center, where Tufts was employed as an orthopedic technician. The victim injured her back and was permanently disabled as a result of a fall in 1991. In March of 1997, she became incapacitated after performing exercises to build up her strength. When she telephoned her physician, he requested that she go to the hospital. The victim went to the Emergency Room at Aiken Regional Medical Center and was seen by a doctor. After the doctor examined the victim, a nurse gave her a shot. When the nurse came back to check on her, Tufts came with her. Thereafter, the nurse left, and Tufts remained in the room. According to the victim, Tufts represented himself to be an orthopedic doctor and began to examine her. While examining the victim, Tufts slipped his hands beneath her panties and digitally penetrated her. The victim told several nurses what had happened and requested that they check Tufts's hands for a "specimen." When the victim returned to her home, she called the police.

The next day, Detective Dwayne Courtney requested that Tufts come to the Aiken Public Safety Department for an interview. During the interview, Tufts denied the victim's allegations. At the conclusion of the interview, Tufts exited the public safety building. However, he returned to Courtney's office a few minutes later and requested to talk to him again. During that second interview, Tufts told Courtney that he had been arrested and charged in a sexual matter in Augusta, Georgia in 1995 while he worked at the University Hospital. When Courtney told Tufts that it sounded like he may have a problem, Tufts stated that he knew he had a problem with his sexual desires. Tufts then requested that he be allowed to go home and discuss the matter with his girlfriend. When Courtney ran a check on Tufts the next day, he discovered he had been charged in a similar incident in Georgia that had been *nolle prossed.*

At trial, the State sought to introduce Courtney's testimony regarding the two conversations he had had with Tufts.[1]

---

1. Tufts did not dispute the first conversation but denied that the second conversation had ever taken place.

Following *in camera* testimony from both Courtney and Tufts, the trial judge found that the second statement had been voluntarily made. After an extensive colloquy with counsel, the trial judge ruled that the alleged statement concerning the prior charge in Georgia was inadmissible. However, he found that the portion of the conversation concerning Tufts's knowledge that he had a problem with his sexual desires could be construed as a confession and was therefore admissible. Immediately after this ruling, Detective Courtney testified before the jury. His testimony regarding Tufts's second statement to him was as follows:

Well, Mr. Tufts put his hands into his pockets. He was standing up, and I was standing near my desk. He put both hands into his pockets and started to sway from side to side, and hung his head down. At that time, he said, that he knew he had a problem with his sexual desires, but that he wanted to go home and talk with his girlfriend that night, and after he talked to his girlfriend, he would come back to see me on the next day, which would have been Friday, and tell me what really happened to [the victim] in the emergency room.

The jury convicted Tufts of CSC third, and the trial judge sentenced him to six years. This appeal follows.

## II. DISCUSSION

Tufts contends Detective Courtney's testimony constituted improper character evidence against him. In support of his argument, Tufts relies primarily on *State v. Nelson*, 331 S.C. 1, 501 S.E.2d 716 (1998). In *Nelson*, the supreme court reversed this court's decision to affirm Nelson's conviction. Nelson, who was convicted at trial of four counts of first degree CSC with a minor and four counts of lewd act on a child, made post-arrest statements to police that he was uncomfortable around adult women and that he had fantasies about children. At trial, the judge overruled Nelson's objection to testimony concerning his fantasies or likes or dislikes of females. The South Carolina Supreme Court reversed, holding that Nelson's general sexual attitudes were not relevant or material to the crime charged because they were admitted to show character. *Id.* at 16, 501 S.E.2d at 724.

■ The State argues initially that this issue is not preserved for appellate review because the trial judge's *in camera* ruling was not a final ruling, citing *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993). *Schumpert* involved an objection to testimony lodged at an *in limine* ruling that was not repeated when the offending testimony was actually offered. It is well settled that a ruling on an *in limine* motion is usually not final and the losing party must renew his or her objection when the evidence is presented. *Id.; State v. Gagum*, 328 S.C. 560, 492 S.E.2d 822 (Ct.App.1997). However, where the motion is ruled on immediately prior to the introduction of the evidence in question, no further objection is necessary. *Samples v. Mitchell*, 329 S.C. 105, 495 S.E.2d 213 (Ct.App.1998); *State v. Mueller*, 319 S.C. 266, 460 S.E.2d 409 (Ct.App.1995). Here, it is clear that the trial judge's decision, reached after *in camera* testimony, lengthy discussion with counsel, and an overnight recess, was a final ruling. Moreover, immediately after the trial judge ruled, the State called Detective Courtney to the stand, and he testified in front of the jury. Because there was no opportunity for the trial judge to change his ruling, we find that Tufts's objections prior to the ruling preserved the issue for appellate review.

■ On the merits, we find the statement was properly admitted. Although the trial judge disallowed most of the statements allegedly made by Tufts in his second interview with Courtney, he did permit Courtney to testify that Tufts told him he had a problem with his sexual desires. This statement is similar to the type of evidence presented in *Nelson*, which the supreme court disallowed. There the court stated: "Generally, only those parts of a confession or statement made to police which are relevant and material to the crime charged should be received into evidence .... [W]e find [Nelson's] general sexual attitudes were not relevant or material to the crime charged because they were admitted to show character." *Nelson*, 331 S.C. at 15–16, 501 S.E.2d at 723–24.

We believe the circumstances of this case are distinguishable from *Nelson*. In *Nelson*, the State sought to admit a number of toys, tapes of children's shows, storybooks, and photographs of young children. Initially, the trial judge thought the offer of evidence was ludicrous. However, after the State's expert on sexual trauma testified that pedophiles

often maintain a large stash of childlike items, the trial judge admitted the evidence. Over the defendant's objection, the trial judge ruled the evidence was probative "not of a 'character issue' but of a 'personality characteristic,'" i.e., that the defendant was a pedophile. *Id.* at 5, 501 S.E.2d at 718.

In addition, the State admitted statements made by the defendant to the police. The defendant stated that he was uncomfortable around adult women and that he had fantasies about children. The supreme court held that the defendant's general sexual attitudes were admitted only to show character. In rejecting the evidence and the defendant's statements, the court stated: "'A necessary corollary to the presumption of innocence is that a defendant must be tried for what he did, not for who he is.'" *Id.* at 15, 501 S.E.2d at 723 (quoting *State v. Melcher,* 140 N.H. 823, 678 A.2d 146, 151 (1996)).

In *Nelson,* the offered evidence and the defendant's statements were relevant only to prove that the defendant was a pedophile. The fact that the defendant was a pedophile spoke only to his propensity to commit the charged offense, and evidence thereof was thus inadmissible. In the present case, however, Tufts's statements were not admitted to show his character; instead, they were admitted as a confession to the specific crime charged.

The trial judge gave much consideration to the arguments of counsel and ultimately ruled the statement was admissible because he believed the jury could view Tufts's statement as a confession. The trial judge found that Tufts's comment regarding his sexual desires was sufficiently related to the officer's questioning about the specific crime to support the inference that Tufts simply chose to convey his confession in that manner. The trial judge believed this fact distinguished the statement from mere character evidence. As an illustration, the trial judge stated, "So in this context or if someone were to say, well I realize that I'm a murderer and I shouldn't have done it. That's an admission of murder rather than a statement that I have a bad character, in this situation." The trial judge further stated, "It is his way of explaining or justifying to the officer what he is admitting to having done ...." Furthermore, Tufts's final statement, that he would return the next morning to explain what really happened to

the victim, definitively links his statement to the specific crime charged.

We agree with the trial judge that Tufts's statement was not introduced to show his bad character; rather, we believe his statement was intended to convey to the officer that he had committed the sexual assault on the victim and that he would return the next morning to give the complete details of the incident. Certainly, there are many ways in which a suspect may choose to implicate himself in a crime. When asked of his guilt, he might simply nod affirmatively, or he might offer a complete recounting of the entire crime. Here, Tufts returned of his own free will to Courtney's office and voluntarily offered his statement that he knew he had a problem and that he would return the next day to describe what really happened to the victim. In our view, this statement was properly admissible as a confession to the charged crime.

For the foregoing reasons, Tufts's conviction is hereby

**AFFIRMED.**

CURETON and GOOLSBY, JJ., concur.