THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED 
 ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
 
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 
 The State, Respondent,
 
 
 

v.
 
 
 
 
 Jimmy Donald Meggs, Jr., Appellant.
 
 
 

Appeal From Florence County
  James E. Brogdon, Jr., Circuit Court Judge

Unpublished Opinion No. 2004-UP-460
 Submitted June 8, 2004  Filed August 31, 2004

AFFIRMED

 
 
 
 
 Jack B. Swerling, of Columbia, for Appellant.
 Attorney General Henry D. McMaster, Chief Deputy Attorney General John 
 W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, 
 and Assistant Attorney General David Spencer, all of Columbia; and Solicitor 
 Edgar Lewis Clements, III, of Florence, for Respondent.
 
 
 

PER CURIAM: Jimmy Donald Meggs, Jr., was 
 convicted of two counts of engaging a child for sexual performance and two counts 
 of contributing to the delinquency of a minor.  Meggs appeals, arguing the trial 
 court erred in: (1) allowing testimony regarding prior bad acts; and (2) excluding 
 evidence.  We affirm. [1] 
FACTS
Meggs was the organizer and leader of a paintball league in Pamplico, South 
 Carolina.  In order to get the paintball league established, Meggs claimed he 
 was a captain in the National Guard and the league was associated with the military.  
 The organization was named the Vanguard Knights, though it had no affiliation 
 with the actual organization by that name.  Meggs portrayed the league to parents 
 as a way to instill discipline in boys.  The boys were given paintball guns, 
 wore military fatigues, had ranks, were responsible for chores, and would participate 
 in military drills including marching.  According to several children, any child 
 not obeying orders was shot at close range with a paintball gun.  The paintball 
 games were held on weekends, and some of the participants would camp overnight 
 in tents in the field. 
The victims, nine-year-old twins A.B. and B.B. 
 [2] , participated in the league and spent several nights in the field.  
 Merline Buntin, an employee of the cafeteria where the victims attended school, 
 took A.B. and B.B. to school and church.  On one occasion, A.B. told her that 
 he was subjected to sexual misconduct.  Buntin informed the victims mother.  
 Meggs was subsequently arrested and charged with two counts of engaging a child 
 for sexual performance and two counts of contributing to the delinquency of 
 a minor. 
Prior to trial, the parties disagreed over whether the State could present 
 the testimony of four additional children.  The trial court held an in 
 camera hearing.  The defense objected to the testimony because it included 
 evidence of bad acts not substantially similar to the charges.  After hearing 
 the testimony, the court excluded two of the four boys testimonies, but the 
 court determined the two other boys, D.C. and his brother E.C., could testify.  

During the trial, the State offered the testimonies of victims A.B. and B.B.  
 A.B. testified Meggs picked them up, and they would spend the whole weekend 
 in the field and camp overnight in tents.  Both boys testified that, at the 
 direction of Meggs, they were required to engage in oral sex with each other 
 and with at least one of the other boys in the paintball league.  Both A.B. 
 and B.B. described how Meggs forced them to simulate a sex act by having one 
 boy lie down and place a paintball on his genitals while the other boy would 
 be forced to retrieve the paintball with his mouth while doing push-ups over 
 the other boy.  A.B. and B.B. each separately testified that they would have 
 been shot with paintballs for refusing to do as Meggs instructed.  According 
 to both boys, Meggs would watch as they performed the acts he demanded, but 
 he would later tell them he had just been joking.  The boys denied that Meggs 
 was their mothers boyfriend and that he ever spent the night at their home.  
 Finally, both A.B. and B.B. testified they did not report the incident because 
 they were afraid of Meggs.   
Brothers D.C. and E.C. also testified regarding the incidents at the paintball 
 field.  Both testified that they witnessed Meggs force A.B. and B.B. to perform 
 oral sex and to simulate sex with push-ups.  D.C. and E.C. both testified that 
 Meggs also made them perform the sex simulation push-ups.  Both D.C. and E.C. 
 testified that they would be shot if they ever disobeyed an order from Meggs.  

 In addition to testifying about the acts Meggs forced D.C., E.C., and victims 
 A.B. and B.B. to perform, D.C. testified regarding an incident where Meggs attempted 
 to have oral sex with him when he spent one night alone in a tent with Meggs.    

A.B. and B.B.s mother testified she was told of the alleged abuse by Buntin.  
 She testified she contacted law enforcement.  She stated she had several conversations 
 with her sons regarding the incidents, and they said it happened on the weekends 
 they were at the paintball field.  On cross-examination, the victims mother 
 testified Meggs never stayed overnight in her home, never bought groceries for 
 her, and never gave her money.  She testified she never asked him for money 
 and she was not in a relationship with Meggs. 
Meggs testified at trial, denying that he ever forced any of the boys to do 
 anything sexual or that he ever shot a child with a paintball at close range.  
 He admitted lying about his credentials.  Meggs sought to show that the victims 
 mother was motivated by money, testifying that he had a relationship with her 
 and gave her money.    
The jury found Meggs guilty on all counts.  He 
 was sentenced to two twenty-year terms of imprisonment on the charges of engaging 
 a child in sexual performance.  The second twenty-year sentence was suspended 
 with five years probation.  Meggs was also sentenced to imprisonment for three 
 years on each of the counts of contributing to the delinquency of a minor, to 
 be served concurrently with the first twenty-year sentence.  This appeal followed.
STANDARD OF REVIEW
 The admission or exclusion of evidence is left to the sound discretion of 
 the trial judge, whose decision will not be reversed on appeal absent an abuse 
 of discretion.  State v. Saltz, 346 S.C. 114, 121, 551 S.E.2d 240, 244 
 (2001).  This court recently held that for purposes of admission of evidence 
 of prior crimes or misconduct to establish a common scheme or plan, the determination 
 of whether the facts surrounding the prior crime or misconduct evidence a common 
 scheme or plan is a question of law.  State v. Tutton, 354 S.C. 319, 
 326-27, 580 S.E.2d 186, 190 (Ct. App. 2003).

LAW/ANALYSIS

 
I.       Prior Bad Acts
Meggs contends the trial court erred by allowing a portion of D.C.s testimony 
 into the record because it was unfairly prejudicial and should have been excluded 
 as a prior bad act under State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923).  
 We disagree.
In addition to describing the acts Meggs forced victims A.B. and B.B. to perform 
 and the push-ups he ordered D.C. and E.C. to perform, D.C. testified during 
 his in camera testimony that when he was alone with Meggs one 
 night, Meggs unzipped his pants, asked him if he was scared, and inched his 
 head closer to D.C.s genitals.  D.C. stated Meggs later asked him if he could 
 perform oral sex on him.  At the end of all the in camera testimony, 
 Meggs moved to exclude D.C.s testimony, arguing that it did not meet the clear 
 and convincing standard in that it did not have a close similarity to the 
 other acts.  The trial court ruled D.C.s testimony could be admitted at trial 
 because there was a logical connection between the charged offenses and the 
 acts described by D.C.  D.C. repeated his testimony regarding the tent incident 
 during the trial, without objection.    
This issue is not preserved for our review on appeal.  Generally, a motion 
 in limine seeks a pretrial evidentiary ruling to prevent the disclosure 
 of potentially prejudicial matter to the jury.  State v. Owens, 346 
 S.C. 637, 651, 552 S.E.2d 745, 752 (2001).  A pretrial ruling on the admissibility 
 of evidence is preliminary and is subject to change based on developments at 
 trial.  Id. at 651, 552 S.E.2d at 752-53.  A ruling on a motion in 
 limine is usually not final and the losing party must renew his or her 
 objection when the evidence is presented.  State v. Schumpert, 312 S.C. 
 502, 507, 435 S.E.2d 859, 862 (1993); State v. Gagum, 328 S.C. 560, 564-65, 
 492 S.E.2d 822, 824 (Ct. App. 1997).  Unless an objection is made at the time 
 the evidence is offered and a final ruling made, the issue is not preserved 
 for review.  Schumpert, 312 S.C. at 507, 435 S.E.2d at 862.  However, 
 where the motion is ruled on immediately prior to the introduction of the evidence 
 in question and no other testimony is presented to provide a basis for the trial 
 court to change its ruling, the ruling is final and no further objection is 
 necessary.  State v. Tufts, 355 S.C. 493, 497, 585 S.E.2d 523, 525 (Ct. 
 App. 2003), cert. denied (June 24, 2004); Samples v. Mitchell, 
 329 S.C. 105, 109, 495 S.E.2d 213, 215 (Ct. App. 1997); State v. Mueller, 
 319 S.C. 266, 268-69, 460 S.E.2d 409, 410-11 (Ct. App. 1995).
Although Meggs objected to all of D.C.s testimony 
 during the in camera hearing, he did not renew his objection during 
 D.C.s trial testimony.  Five witnesses, including victims A.B. and B.B., testified 
 at trial prior to D.C., potentially providing a basis for Meggs to approach 
 the trial court again about excluding D.C.s testimony.  As Meggs failed to 
 object during trial, the issue is not preserved for review on appeal.  Schumpert, 
 312 S.C. at 507, 435 S.E.2d at 862.
Further, even assuming the issue was preserved 
 and the evidence was improperly admitted, any error was harmless.  Whether an 
 error is harmless depends on the circumstances of the particular case.  In 
 re Harvey, 355 S.C. 53, 62-63, 584 S.E.2d 893, 897 (2003).  No definite 
 rule of law governs this finding; rather, the materiality and prejudicial character 
 of the error must be determined from its relationship to the entire case.  
 State v. Mitchell, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985).  An 
 error is harmless where it could not have reasonably affected the result of 
 the trial.  Harvey, 355 S.C. at 63, 584 S.E.2d at 897.  Thus, an insubstantial 
 error not affecting the result of the trial is harmless where guilt has been 
 conclusively proven by competent evidence such that no other rational conclusion 
 can be reached.  State v. Kelley, 319 S.C. 173, 179, 460 S.E.2d 368, 
 371 (1995).
There was overwhelming evidence to conclusively 
 prove Meggs guilt.  Eyewitnesses testified to the sexual acts directed by Meggs.  
 Other witnesses confirmed that the boys had described the various sexual acts.  
 Finally, Meggs credibility was seriously called into question by his claim 
 of being a captain in the National Guard and the deceptive nature of the paintball 
 league.  Accordingly, the decision of the trial court to allow D.C.s testimony 
 is affirmed.

II.      Other Testimony
Meggs contends the trial court erred in refusing to allow his father to testify 
 regarding the content of two telephone conversations.  He also asserts the court 
 erred in refusing to allow him to testify to statements made by the victims 
 mother regarding her need for money.  We disagree, and find even if the statements 
 were improperly excluded, it was harmless error.
A.
Meggs argues the trial court erred in finding his fathers testimony regarding 
 two telephone conversations was hearsay because they were offered to show a 
 relationship between Meggs and the victims mother.  
At trial, Meggs father testified that on one occasion, he 
 answered a telephone call from the victims mother.  He stated that the victims 
 mother believed she was talking to Meggs.  The State raised hearsay objections 
 to the testimony regarding what the victims mother asked Meggs father while 
 on the phone.  After sustaining the hearsay objections, the court held an in 
 camera hearing to determine the admissibility of the testimony.  
During the in camera hearing, Meggs counsel argued the purpose 
 of the testimony regarding the telephone conversation was to show that the victims 
 mother called looking for Meggs.  The court allowed Meggs to proffer his fathers 
 testimony.  Meggs father testified the victims mother called for Meggs to 
 come over to her house.  He also testified regarding a second telephone conversation 
 in which he picked up the phone and they [the victims mother and Meggs] were 
 arguing.  Meggs father testified the subject of that conversation was [a]bout 
 money.  The trial court again sustained the objection, finding that the testimony 
 regarding both telephone calls was hearsay and that no foundation was properly 
 laid for the testimony.  The court limited Meggs fathers testimony before 
 the jury to the fact that he heard the victims mothers voice on the telephone 
 two times during the same time period that the victims allege the abuse occurred.    

Meggs testified at trial that he had a sexual relationship with the victims 
 mother at the time of the allegations and that he spent the night at her house.  
 Meggs stated that when he learned of the victims allegations, he went to the 
 mothers house to find out more information.  When asked if the victims mother 
 discussed the allegations with him, Meggs stated that the only thing the mother 
 wanted to discuss was money, and she told Meggs she needed money.  Although 
 the court sustained the States hearsay objection to this testimony, the State 
 did not move to strike and the jury was not instructed to disregard it.  Meggs 
 went on to testify that he provided between $2,000 and $3,000 in financial support 
 to the victims mother for bills and groceries. 
Although Meggs argues his fathers excluded statements 
 were not hearsay because they were asserted to show a relationship between Meggs 
 and the victims mother, the record does not reflect that he advanced that reason 
 for admission at trial.  See State v. McKnight, 352 S.C. 635, 
 646, 576 S.E.2d 168, 174 (2003) (holding that an argument not raised before 
 the trial court was not preserved for appellate review).  Moreover, we find 
 that even assuming the statements were improperly excluded, it constituted harmless 
 error.  The improper exclusion of evidence is harmless where the evidence is 
 merely cumulative to other evidence properly admitted.  State v. Ferguson, 
 300 S.C. 408, 411, 388 S.E.2d 642, 644 (1990) (finding the trial judges refusal 
 to admit a statement was harmless error where it was cumulative to other testimony).  
 Meggs testified he had a relationship with the victims mother and that he spent 
 the night at her house.  Thus, exclusion of the fathers testimony was not error 
 under the particular facts of this case.
B.
Meggs also asserts the trial court erred in excluding 
 his fathers testimony and his testimony regarding the mothers demand for money 
 because it showed the victims mother made a prior inconsistent statement and 
 had a motive to encourage her children to lie.  Although the victims mother 
 denied having a relationship with Meggs and ever receiving money from him, Meggs 
 testified he gave her money and that it was not in the form of a loan.  Thus, 
 evidence was admitted that Meggs provided money to the victims mother.  Further, 
 the evidence of Meggs guilt was overwhelming.  Several eyewitnesses testified 
 regarding the acts the victims were required to perform.  Other witnesses testified 
 that the boys told them of the acts and the stories were consistent.  Additionally, 
 as argued by the State, Meggs never laid a proper foundation under Rule 613(b), 
 SCRE, for admission of the fathers testimony because the victims mother was 
 never given details of the statement or the opportunity to admit or deny the 
 statement. [3]   Finally, Meggs 
 credibility was suspect as he admitted lying regarding his service in the National 
 Guard and in his credentials.  
The excluded testimony was cumulative to other 
 testimony in the record, and, in light of the overwhelming evidence of guilt, 
 it could not reasonably have affected the result of the trial.  Accordingly, 
 the decision of the trial court to exclude the testimony is affirmed.
CONCLUSION
The evidence supporting Meggs guilt was overwhelming.  Thus, any error in 
 excluding Meggs and his fathers testimony regarding the victims mother was 
 harmless.  Because Meggs did not renew his objection to D.C.s testimony at 
 the time it was offered, Meggs failed to preserve the prior bad act issue for 
 appeal.  Accordingly, Meggs convictions and sentences are 
AFFIRMED.
HEARN, C.J., STILWELL, J. and CURETON, A.J., concur.

 
 
 [1]   Because oral argument would not assist the court in deciding this 
 case, we decide it without oral argument pursuant to Rule 215, SCACR.  

 
 
 [2]   Due to the sensitive nature of this case, we assign alternate initials 
 to protect the minor victims.  

 
 [3]   Rule 613(b), SCRE, provides 
 as follows:

 Extrinsic evidence of a prior inconsistent statement by a witness 
 is not admissible unless the witness is advised of the substance of the statement, 
 the time and place it was allegedly made, and the person to whom it was made, 
 and is given the opportunity to explain or deny the statement.  If a witness 
 does not admit that he has made the prior inconsistent statement, extrinsic 
 evidence of such statement is admissible.