630 S.E.2d 274

The STATE of South Carolina, Petitioner,

v.

Gary Thomas HILL, Respondent.

No. 26145.

Supreme Court of South Carolina.

Heard March 22, 2006.

Decided May 8, 2006.

650

Deputy Director for Legal Services Teresa A. Knox, Assistant Chief Legal Counsel J. Benjamin Aplin, and Legal Counsel Tommy Evans, Jr., all of South Carolina Department of Probation, Parole & Pardon Services, of Columbia, for Petitioner.

J. Stephen Welch and Adam M. Cain, both of The Welch Law Firm, of Greenwood, for Respondent.

Chief Justice TOAL:

The trial court revoked Respondent's probation after he committed several probation violations. The court of appeals reversed in part, holding that Rule 5, SCRCrimP (titled "Disclosure in Criminal Cases") and the disclosure rule announced in *Brady v. Maryland*[1] applied to probation revocation proceedings. The State appealed and we now reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Respondent received a twenty year prison sentence for convictions of second degree arson, second degree burglary, malicious injury to personal property, driving under the influence—fourth offense, and criminal domestic violence—third offense. The trial court suspended the sentence to ten years imprisonment and five years probation. Respondent began his probation in 1997.

Approximately five months before Respondent's probation was scheduled to end, Respondent's probation agent received a call from the Department of Social Services alleging that Respondent was in possession of a firearm and had been pointing the weapon at his son. The probation agent contacted Respondent and ordered him to report to the probation office.

While meeting with his probation agent at the probation office, Respondent admitted a .22 caliber rifle was in his home. Respondent alleged the rifle was his son's and that the son sometimes kept the gun in the house. At the time, Respondent's son was 11 or 12 years old. The probation agent informed Respondent that he and Respondent would be ac-

---

1. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

companying some additional probation agents to Respondent's house, that the agents were going to search the house, and that Respondent would be arrested for violating his probation if the agents discovered any weapons. At that point, Respondent asked to go into the hallway and get a drink of water. The probation agent granted Respondent's request, and after reaching the water fountain, Respondent ran down the hallway and out of the building. Seeing Respondent's attempt to escape, the probation agent ordered Respondent to stop.

As the probation agent pursued Respondent, three other agents joined in the pursuit. After exiting the building, Respondent locked himself in his vehicle and attempted to leave the probation office parking lot. The four agents surrounded Respondent's vehicle, drew their firearms, and ordered Respondent to get out of his vehicle. Respondent, however, started his vehicle and attempted to drive away from the premises. Although at least one agent attempted to prevent Respondent from leaving by standing in front of his vehicle, Respondent continued to drive forward. The agent obstructing Respondent's exit was able to avoid being struck by Respondent's vehicle, and at this point, one of the agents began firing his weapon into Respondent's car. Although Respondent received three gunshot wounds, he managed to drive out of the parking lot and escape. Respondent was arrested later at the emergency room.

The State charged Respondent with violating his probation by possessing a firearm, failing to obey his probation agent's commands, and failing to avoid injurious habits by attempting to run over a probation agent with his car. Prior to Respondent's revocation proceeding, Respondent served his probation agent with a request for disclosure of information pursuant to Rule 5 and *Brady*.[2] At some point, Respondent filed a motion to continue the revocation proceeding because his probation agent refused to comply with the disclosure requests.

At the hearing on Respondent's motion for a continuance, the court addressed Respondent's *Brady* and Rule 5 requests.

---

**2.** After the court revoked his probation, Respondent served the Tenth Circuit Solicitor's Office with *Brady* and Rule 5 requests. These requests, however, are not the subject of this appeal.

In a reference to S.C.Code Ann. § 24–21–290 (Supp.2005) [3] (titled "Information received by probation agents privileged"), the court advised that a statute provided for the confidentiality of the department of probation's records unless they are ordered disclosed by the court. The court instructed Respondent to bring a motion under § 24–21–290 if he was indeed seeking the probation agent's file. Respondent, however, filed no additional motions or requests. The trial court held Respondent's probation revocation proceeding approximately one month later, and at the conclusion of the proceeding, the court revoked Respondent's probation and sentenced him to seven years imprisonment.

Respondent moved for reconsideration, arguing that the police report covering his escape from the probation office was unfinished at the time of his probation revocation proceeding and that the final police report contained mitigating evidence. [4] During the hearing on Respondent's motion for reconsideration, Respondent alleged he did not intend to harm any of the probation agents and that the probation agents were not in any danger of sustaining serious injury during his escape attempt. [5] After hearing Respondent's offered evidence, including testimony from Respondent himself, the court denied Respondent's motion. Respondent appealed.

The court of appeals affirmed the trial court's decision on two issues not related to this appeal, [6] but the court reversed the revocation of Respondent's probation. The court of ap-

3. The version of the statute appearing in the 2005 code supplement is identical to the version in effect at all times relevant to this case.

4. Respondent obtained the police report in response to subpoenas he served on the South Carolina Law Enforcement Division (SLED) and the Tenth Circuit Solicitor's Office.

5. At the beginning of the hearing, the trial court asked Respondent whether he was introducing mitigating evidence or offering evidence disputing facts that were already determined. Because Respondent indicated he sought to dispute the fact that he intended to harm any of the probation agents during his escape, Respondent specified that his motion was a motion for a new trial.

6. These issues involved 42 U.S.C. § 1983 and Rules 28 and 29, SCRCrimP. The court of appeals found these issues were not preserved for review. *State v. Hill*, 359 S.C. 301, 315–16, 597 S.E.2d 822, 830 (Ct.App.2004).

peals held that *Brady* and Rule 5 applied to probation revocation proceedings because South Carolina courts had extended these rules "beyond criminal trial proceedings" and because a probation revocation proceeding involves a determination of guilt. *Hill*, 359 S.C. at 312–3, 597 S.E.2d at 828–29.

The State argued that even if *Brady* and Rule 5 applied, Respondent's due process rights were not violated because Respondent eventually received the requested information, presented the information at his motion for a new trial, and the trial court affirmed its decision. Disagreeing, the court of appeals stated "[h]aving already found [Respondent] violated his probation ... we believe it would have been difficult for the court to be completely objective during the subsequent proceeding. Thus we find the information was material and the failure to disclose it deprived [Respondent] of a fair hearing." *Id.* at 314–15, 597 S.E.2d at 829–30. The State appealed.

This Court granted certiorari to review the court of appeals' decision and the State raises the following issues for review:

I. Did the court of appeals err in extending *Brady* and Rule 5 to probation revocation proceedings?

II. If *Brady* and Rule 5 apply to probation revocation proceedings, did the State violate either rule?

## LAW/ANALYSIS

### I. *Brady* and Rule 5's Applicability to Probation Revocation

The issues of whether the specific requirements of *Brady* and Rule 5 apply to probation revocation proceedings are novel questions in South Carolina. The State argues that the court of appeals erred in applying both rules to these proceedings, and we agree.

### A. *Brady*

*Brady* provides that a criminal defendant is denied due process when the prosecution suppresses evidence that is favorable to him. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, an appeal from a state court murder conviction, the prosecution failed to dis-

close that a co-defendant previously admitted to the killing. *Id.* at 84, 83 S.Ct. 1194. The Maryland court of appeals held that the failure to disclose this evidence constituted a denial of due process, and the United States Supreme Court agreed. *Id.* at 86, 83 S.Ct. 1194. Though the court addressed the due process violation in dicta, *see id.* at 92, 83 S.Ct. 1194 (White, J., concurring), the rule requiring the disclosure of evidence favorable to the accused is commonly known as the *Brady* rule.

Although *Brady* provides a bright-line rule for the disclosure requirements necessary to guarantee that a criminal defendant receives due process, it is equally fundamental that due process requirements are not rigid and inflexible. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Instead, due process only calls for such protections as the particular situation demands. *Id.* In the specific areas of probation and parole revocation, both this Court and the United States Supreme Court have provided guidance as to what due process requires.

In *Morrissey v. Brewer*, 408 U.S. 471, 474, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), a parolee alleged that minimal due process required that he be given a pre-revocation hearing. The court recognized that although both criminal trials and parole revocations· involve potential deprivations of liberty, revocation "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* at 480, 92 S.Ct. 2593. Similarly, the court recognized the state's "overwhelming interest" in being able to return the parolee to prison without the burden of a new criminal trial. *Id.* at 483, 92 S.Ct. 2593. The court qualified this statement, however, by noting that the state had "no interest in revoking parole without some informal procedural guarantees." *Id.* at 483–84, 92 S.Ct. 2593. Ultimately, the court held that fundamental justice required a parolee be given a reasonable opportunity to explain an alleged violation. *Id.*

Importantly, the court in *Morrissey* left the states with the responsibility of determining the exact procedures to be followed. *Id.* at 488–89, 92 S.Ct. 2593. Instead of detailing

specific procedures, the court limited its declaration to describing the minimum requirements of due process. *Id.* The court listed these requirements as (a) written notice of the alleged violations, (b) disclosure to the parolee of the evidence against him, (c) an opportunity to be heard in person and to present witnesses and evidence, (d) the right to confront and cross-examine, (e) a neutral and detached hearing body, and (f) a written decision from the hearing body. *Id.*

In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court dealt with whether due process required that a probation violator be given a hearing before his probation was revoked. In *Gagnon,* the court drew almost exclusively from its opinion in *Morrissey;* relying heavily on the "limited liberty" interest subject to deprivation in the probation and parole setting. *Gagnon,* 411 U.S. at 781, 93 S.Ct. 1756. Adhering closely to *Morrissey's* reasoning, the court quickly determined that due process required that a probationer be given a hearing before his probation was revoked. *Gagnon,* 411 U.S. at 782, 93 S.Ct. 1756.

Additionally, the court further elaborated on the differences between criminal trials and probation revocation proceedings. For example, the court advised that a probation agent's function is not to compel conformance to a strict code of behavior, but rather, to supervise a course of rehabilitation. *Id.* at 784, 93 S.Ct. 1756. For this reason, the court noted that probation agents are often armed with the power to unilaterally recommend or declare revocation. *Id.* While the court recognized the importance of the liberty interests at stake in probation revocation proceedings, the court ultimately reversed the lower court's decision requiring the states to provide counsel for probationers in revocation proceedings. *Id.* at 787, 93 S.Ct. 1756. The court stated, "there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer have stakes in preserving these differences." *Id.* at 788–89, 93 S.Ct. 1756. The court resolved the issue of a probationer's right to counsel in a revocation proceeding by recommending a case by case approach; an approach dependent on the complexity of the alleged violations and whether the probationer's ability to

meaningfully contest the alleged violations required the services of a trained advocate.[7] *Id.* at 788, 93 S.Ct. 1756.

■ This broad framework, supplied by the United States Supreme Court's interpretation of federal due process guarantees, is somewhat amorphous. *Morrissey* and *Gagnon* establish that a probationer charged with a violation must be afforded minimal due process. This allows us to re-phrase the question presented to read: "does minimal due process require that *Brady* be extended to probation revocation proceedings?" We conclude that the court of appeals erred in answering "yes." Both reasons provided by the court of appeals for applying *Brady* are fundamentally incorrect.

First, the court of appeals reasoned that the differences between a criminal trial and a revocation proceeding were irrelevant to the issue because South Carolina courts had extended *Brady* to sentencing proceedings and guilty pleas. *Hill,* 359 S.C. at 312, 597 S.E.2d at 828. Although the court of appeals correctly noted that guilty pleas and sentencing proceedings are not criminal trials in the literal sense, the court of appeals overlooked the fact that, like a trial, both of these actions occur before the court imposes a criminal sentence. Probation revocation, by comparison, occurs after a criminal sentence is imposed. In this analysis, the intervening criminal sentence is the crucial point at which the due process guarantees dramatically change. Because he is already covered with a criminal sentence, a probationer is subject only to a deprivation of "limited liberty" in a revocation proceeding.

---

7. In South Carolina, Rule 602(A), SCACR, provides indigent probationers with counsel at a revocation hearing.

Additionally, at first glance, *Gagnon's* resolution of the right to counsel issue appears to be at odds with *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). However, *Mempa* dealt with probation revocation in a rather unique context. In *Mempa,* two defendants received probation as a result of guilty pleas. *Id.* at 130, 132, 88 S.Ct. 254. When the defendants were later charged with probation violations, the revocation court conducted full sentencing hearings on the original criminal charges. *Id.* at 135, 88 S.Ct. 254. The Supreme Court held that due process required that the probationers have counsel at these proceedings because they amounted to "deferred sentencing hearings." *Id.* at 137, 88 S.Ct. 254. In our view, *Mempa* and *Gagnon* are not in conflict.

Second, the court of appeals erred in reasoning that "[s]imilar to a sentencing or guilty plea proceeding, a probation revocation proceeding involves a determination of guilt." *Id.* at 312–13, 597 S.E.2d at 828. In elaborating on the framework established by the United States Supreme Court, we have stated that while the underlying probation violations "may themselves be criminal offenses, the probation revocation proceeding is not a criminal trial of those charges, but a more informal proceeding with respect to notice and proof of the alleged violations." *State v. Franks,* 276 S.C. 636, 638, 281 S.E.2d 227, 228 (1981) (holding that the Fourth Amendment's requirement that a neutral magistrate issue an arrest warrant is not applicable to a probationer charged with a violation). Thus, our Court has recognized "that the rights of an offender in a probation revocation hearing are not the same as those extended him ... upon the trial of the original offense." *Id.* at 639, 281 S.E.2d at 228; *see also Duckson v. State,* 355 S.C. 596, 586 S.E.2d 576 (2003) (recognizing the differences between parole and probation revocation proceedings and criminal trials).

We hold that *Brady's* rule should not, and indeed, cannot be applied to probation revocation proceedings. *Brady's* requirement that evidence favorable to the accused be disclosed is necessary in criminal trials because a criminal conviction is a determination of guilt beyond a reasonable doubt. *Brady* is based on the premise that the suppression of evidence that is material to guilt or punishment casts the reliability of the verdict into doubt; therefore, the guilt standard cannot have been met. In contrast, probation revocation proceedings have a much lower evidentiary threshold. Instead of requiring proof beyond a reasonable doubt, probation is properly revoked upon an evidentiary showing of facts *tending to establish* a violation. *State v. White,* 218 S.C.130, 136, 61 S.E.2d 754, 756 (1950). In our view, a disclosure standard that governs when nearly concrete proof is required is unworkable and impractical in a proceeding where a party need only *tend* to look guilty.

Our opinion in *Franks* provides the guiding principle for this case: while the underlying probation violations may be criminal offenses, the probation revocation proceeding is not a

criminal trial of those charges. 276 S.C. at 638, 281 S.E.2d at 228. In South Carolina, a probationer must avoid injurious or vicious habits, avoid persons or places of disreputable character, permit the probation agent to visit at his home or elsewhere, work faithfully at suitable employment, obey a curfew, support his dependents, and follow his probation agent's instructions and advice. S.C.Code Ann. § 24–21–430 (Supp.2005). The subjective natures of these factors further support the distinctions between probation revocation proceedings and criminal trials, as well as the conclusion that *Brady's* disclosure rule is ill-suited for applicability to probation revocation.

Because they are fundamentally different from a criminal trial and other pre-sentencing proceedings, we decline to extend the *Brady* rule to probation revocation proceedings.[8] The relevant precedent, particularly *Gagnon*; *Morrissey*, and *Franks*, already requires that a probationer be afforded reasonable discovery. Accordingly, we reverse the court of appeals' decision.

## B. Rule 5, SCRCrimP

Rule 5, SCRCrimP, provides for the disclosure of evidence in criminal cases. We hold that Rule 5 does not apply to probation revocation proceedings because these proceedings are not criminal trials.

*Morrissey* and *Gagnon* outline the boundaries beyond which the scope of discovery in these "limited liberty" cases may not be restricted. Specifically, these cases indicate that minimal due process requires that a probationer be given notice of the

---

8. In other circumstances, § 24–21–290 (providing that a probation agent's file is privileged) could prove critical to the due process analysis. For example, during oral argument, Respondent constructed a hypothetical case in which, while charging a probationer with violating his probation by using illegal drugs, the probation office possessed a negative drug test for the probationer. Respondent alleged that failing to extend *Brady* to revocation proceedings would operate to suppress the exculpatory drug test. This hypothetical is not instructive. The hypothetical improperly presumes (1) that the probation office would seek revocation in the face of a negative drug test, and (2) that the trial court would deny a § 24–21–290 disclosure request. Additionally, since §§ 24–21–290 and 24–21–450 operate to govern discovery in probation revocation cases, any due process challenge to discovery in these cases would necessarily be a challenge to these statutes. Such is not this case.

alleged violations and disclosure of the evidence against him. *Gagnon,* 411 U.S. at 782, 93 S.Ct. 1756; *Morrissey,* 408 U.S. at 488–89, 92 S.Ct. 2593.

In South Carolina, §§ 24–21–290 and 24–21–450 set forth rules concerning discovery in probation revocation proceedings. In line with *Morrissey* and *Gagnon's* notice and disclosure requirements, § 24–21–450 requires a probation agent to prepare and submit a pre-hearing report showing how the probationer has allegedly violated his probation.[9] Blindly adding Rule 5 to this framework is unnecessary.

Additionally, § 24–21–290 further supports the position that Rule 5 should not apply to probation revocation proceedings. If the probation agent was, as a matter of rule, required to disclose his file, the confidentiality statute would be meaningless.

For these reasons, we hold that Rule 5 is irrelevant in this context and does not apply to probation revocation proceedings.[10]

## II. Reversible Error

The State argues the court of appeals erred in finding *Brady* and Rule 5 violations because the court based its harmless error analysis entirely on speculation. We agree. Though we need not address this issue because we have held that *Brady* and Rule 5 do not apply to probation revocation

---

9. Notably, § 24–21–450 only requires the probation agent to submit the violation report to the court. However, the State alleges that this report is given to the probationer before his hearing and Respondent has not contested the State's assertion in this regard.

10. Although we hold that *Brady* and Rule 5 do not apply to probation revocation proceedings, we question whether holding to the contrary would have any effect on Respondent's case. Though it is likely that the probation agent's file eventually contained the SLED and Anderson City Police reports, it is questionable whether these reports were in the agent's file prior to the probation revocation proceeding. Additionally, we are unsure as to why Respondent chose to seek these reports from his probation agent and not directly from these law enforcement agencies. In most cases, we believe the confidential status of the probation agent's file works to the probationer's advantage. *See State v. Hook,* 356 S.C. 421, 425, 590 S.E.2d 25, 27 (2003) (stating that the statute effectively operates to keep the probationer's confession to his probation agent out of court).

proceedings, we take this opportunity to both clarify what constitutes reversible error under *Brady* and correct an egregious error in the lower court's opinion.

 Determining whether evidence withheld by the state is "material" under *Brady* turns on whether the cumulative effect of the withheld evidence results in a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Stated differently, the question is whether the defendant received a trial resulting in a verdict worthy of confidence. *Id.* at 434, 115 S.Ct. 1555.

In reversing the revocation of Respondent's probation, the court of appeals, under the guise of a harmless error analysis, stated "[h]aving already found [Respondent] violated his probation ... we believe it would have been difficult for the court to be completely objective during the subsequent proceeding. Thus we find the information was material and the failure to disclose it deprived [Respondent] of a fair hearing." *Hill*, at 314–15, 597 S.E.2d at 829–30. We are utterly perplexed by this analysis. If this statement provided the correct standard for harmless error (notwithstanding the fact that *Kyles* provides the standard for determining a *Brady* violation), there would be no purpose in ever filing for reconsideration, rehearing, or a new trial based on after discovered evidence.

 Additionally, this analysis ignores the fact that the trial court heard Respondent's after acquired evidence and affirmed its original decision. Because the trial court affirmed its decision after hearing this evidence, by the very definition, any error in failing to disclose the evidence was harmless error. *See State v. Kelley*, 319 S.C. 173, 460 S.E.2d 368 (1995) (stating that error is harmless if it could not reasonably have affected the result of trial).

### Conclusion

For the foregoing reasons, we reverse the court of appeals' decision holding that Rule 5 and *Brady* apply to probation revocation proceedings and finding violations of both.

MOORE, WALLER and BURNETT, JJ., concur.
PLEICONES, J., concurring separately.

Justice PLEICONES concurring.

I concur in the majority's decision to reverse the Court of Appeals' decision. I write separately, however, because in my opinion neither the Rule 5 issue nor the *Brady* issue was preserved for appeal. The circuit court did not rule on either claim, instead directing Respondent to file a motion under S.C.Code Ann. § 24–21–290 (Supp.2005).[11] Respondent neither objected to this ruling nor filed a motion pursuant to the statute. Accordingly, no issue involving Respondent's discovery request was preserved for appellate review, and the Court of Appeals erred in addressing the merits of Respondent's appeal. *E.g., State v. Burton,* 356 S.C. 259, 589 S.E.2d 6 (2003). I would therefore reverse the Court of Appeals, but would not reach the substantive issues.

---

11. Like the trial judge, I believe that discovery in probation revocation proceedings is governed, at least in the first instance, by the statute.