552 S.E.2d 284

**The STATE, Respondent,**

v.

**Sherinette WANNAMAKER, Appellant.**

**No. 25333.**

Supreme Court of South Carolina.

Heard May 23, 2001.

Decided July 23, 2001.

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Assistant Attorney General Derrick K. McFarland; and Solicitor Warren B. Giese, all of Columbia, for respondent.

BURNETT, Justice:

Appellant was convicted of the armed robbery and murder of Amber Bone ("the victim"). We affirm.

## FACTS

The victim was stabbed in the back nine times and her skull was crushed. Appellant's friend LaShawn Roberts was separately tried and convicted for the same crimes. Appellant's defense was that Roberts was obsessed with appellant and killed the victim in a jealous rage because of the victim's

sexual advances toward appellant. Appellant raises two alleged errors which, she asserts, undermine both convictions:

I. Did the trial court err by refusing to suppress a custodial statement improperly obtained after appellant invoked her right to counsel?

II. Did the trial court err by refusing to admit evidence that LaShawn Roberts wrote appellant a letter admitting she killed the victim because she was jealous?

## DISCUSSION

### I. Invocation of Right to Counsel

Appellant argues the trial court erred by refusing to suppress a custodial statement improperly obtained after she invoked her right to counsel. We disagree.

Appellant gave the police three written statements, each admitting progressively more involvement in the crimes of which she was convicted. The admissibility of the third statement is at issue here. In it, appellant admits that (1) she hit the victim in the back of the head with a pipe, (2) she covered the victim's back with a pillow (on Roberts' orders) because blood was shooting up, (3) she helped Roberts clean up after the murder, (4) the victim was still alive when she and Roberts left the scene, and (5) she helped Roberts dispose of evidence of the crime.

Appellant moved to suppress the statement on the ground it was improperly obtained after she had invoked her right to counsel. At the in camera suppression hearing, the police officer who questioned appellant testified as follows:

After I advised her of her rights, the substance of the conversation was her involvement in this particular incident.... She requested to speak to either a lawyer or her mother.... I asked her if she had a lawyer in mind that she wanted me to call. She hesitated momentarily and said she didn't have a lawyer, just contact her mother for her and I said okay.

Thereafter, appellant's mother arrived at the police station and they were allowed to speak with each other privately.[1] In

---

1. Appellant was nineteen years old at the time.

her mother's presence, the officer then advised appellant of her rights again, and appellant's mother signed the advice of rights form as a witness. Appellant's in camera testimony does not dispute the officer's version of events concerning her request for an attorney or lack thereof.

The trial court denied the motion to suppress. The court found appellant did not make an unequivocal request for an attorney. Furthermore, any defects, if they existed at all, were cured by the subsequent Miranda warnings given prior to taking the third statement.

█ This issue is unpreserved because trial counsel failed to make a contemporaneous objection to the statement being read into evidence. See *State v. Hughes*, 336 S.C. 585, 591, 521 S.E.2d 500, 503 (1999) (an in limine ruling is not final and does not preserve the issue for appeal).

█ In any case, the issue is without merit. The Fifth Amendment guarantees the right to speak with counsel upon request in a custodial setting. U.S. Const. amend V; *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). If a suspect invokes her right to counsel, police interrogation must cease unless the suspect herself initiates further communication with police. *Id.* However, police officers are not required to cease questioning a suspect unless her request for counsel is unambiguous. *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362, (1994) ("Maybe I should talk to a lawyer," was not a request for counsel); but see *State v. Kennedy*, 333 S.C. 426, 510 S.E.2d 714 (1998) ("I think I need a lawyer" was a request for counsel). The Supreme Court has noted that "if a suspect is 'indecisive in his request for counsel,' the officers need not always cease questioning." *Davis*, 512 U.S. at 460, 114 S.Ct. 2350 (quoting *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 485 (1966)). Furthermore, this Court has held an adult's request for someone other than an attorney does not invoke a Fifth Amendment right to speak with counsel. *State v. Register*, 323 S.C. 471, 477, 476 S.E.2d 153, 157 (1996) (request for mother).

█ Appellant's request for her mother or a lawyer was not an unambiguous invocation of her Fifth Amendment right to have counsel present during interrogation. On the contrary, the request was completely ambiguous, and when the officer

sought clarification, appellant asked for her mother.[2] The trial court did not abuse its discretion in admitting appellant's statement. See *Kennedy*, 333 S.C. at 429, 510 S.E.2d at 715 (trial court's conclusion on issues of fact as to the voluntariness of a statement will not be disturbed unless so manifestly erroneous as to show an abuse of discretion).

## II. Exculpatory Evidence

■ Appellant asserts the trial court erred by refusing to admit evidence that LaShawn Roberts wrote appellant a letter admitting she killed the victim because she was jealous. We disagree.

The defense proffered testimony from appellant's roommate in jail, Janet Suber, that Roberts delivered a letter to appellant threatening to kill Suber and admitting that "she did it for Sheri because she was in love with Sheri and Sheri didn't feel the same way about her as she did her, so that's the reason why she killed the other girl." Suber testified she gave the letter to a guard. The guard had no recollection of Suber or this particular letter. The trial court ruled the letter was inadmissible hearsay.

Appellant argues Suber's testimony concerning the letter should have been admitted as a statement against interest. Statements against interest made by an unavailable declarant[3] may be admissible as an exception to the hearsay rule. Rule 804(b)(3), SCRE. However, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

The trial court correctly ruled the hearsay was not sufficiently corroborated to be admissible.[4]

---

2. The Davis Court specifically declined to adopt a rule requiring officers to ask clarifying questions, but described the practice of asking clarifying questions as "good police practice." 512 U.S. at 461–62, 114 S.Ct. 2350.

3. Roberts invoked her Fifth Amendment privilege, and was therefore "unavailable" for hearsay purposes. See *State v. Doctor*, 306 S.C. 527, 413 S.E.2d 36 (1992).

4. The trial court also ruled the testimony inadmissible because the letter, even if it existed, did not exculpate appellant. Trial counsel

■ Twice recently this Court has explained the corroboration requirement of Rule 804(b)(3). *State v. McDonald*, 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. Kinloch*, 338 S.C. 385, 526 S.E.2d 705 (2000). A defendant seeking to offer a statement pursuant to this exception bears the "formidable burden" of establishing that corroborating circumstances clearly indicate the trustworthiness of the statement. *Kinloch*, 338 S.C. at 389, 526 S.E.2d at 706 (citations omitted). Whether a statement has been sufficiently corroborated is a question "left to the discretion of the trial judge 'after considering the totality of the circumstances under which a declaration against penal interest was made.'" *McDonald*, at 323, 540 S.E.2d at 466 (quoting *Kinloch*, 338 S.C. at 391, n. 5, 526 S.E.2d at 708, n.5).

We emphasized in *McDonald* that the corroboration requirement "goes not to the truth of the statement's contents, but rather to the making of the statement." *McDonald*, at 323, 540 S.E.2d at 466. The trial court here correctly ruled the statement uncorroborated. The guard who was expected to testify that Suber gave him the letter Roberts allegedly wrote threatening her and confessing to the murder had no recollection of Suber or the letter. Thus, Suber's proffered testimony is the only evidence the letter ever existed. Appellant did not carry her burden of showing circumstances clearly corroborating the making of the statement, and the trial court therefore did not abuse its discretion in refusing to admit the testimony.

Appellant's convictions are **AFFIRMED**.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.

■

---

argued the rule requires the statement merely be "offered to exculpate"; whether the statement is exculpatory is "for the jury to decide." This issue is not argued on appeal.