THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Phillip Woods, Appellant.
 
 
 

Appeal From Florence County
 J. Derham Cole, Circuit Court Judge

Unpublished Opinion No. 2005-UP-470
Submitted June 1, 2005  Filed July 26, 2005

AFFIRMED

 
 
 
John Eagle Miles, of Sumter, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Edgar Lewis Clements, III, of Florence, for Respondent.
 
 
 

PER CURIAM:  Phillip Woods appeals his convictions for first-degree burglary, assault with intent to commit first-degree criminal sexual conduct, and assault with intent to commit third-degree criminal sexual conduct.  He argues the trial court erred in admitting his self-incriminating statements because they were obtained in violation of his Miranda[1] rights.  We affirm.
FACTS
On August 4, 2001, Woods and Denise Martin were working the 11:00 p.m. to 7:30 a.m. shift at the Oaks Residential Facility in Timmonsville, South Carolina.  Woods duties included monitoring the mens hallway, and he was not permitted to enter the womens hallway.  Although it was against regulation, Woods told Denise Martin that he needed to go to his home less than a mile away at 12:30 a.m.  When he left, Denise Martin noticed that Woods car was still parked in the facilitys parking lot.  Shortly thereafter, she attempted to take some clean laundry to a female residents room.  Martin heard strange noises coming from the room, and she attempted to push the door open.  Someone wearing latex gloves grabbed the door and closed it.  Denise Martin called police, and Officer Karlos Moody arrived around 12:49 a.m.  Woods reappeared at work at the same time.  
Officer Moody found the resident lying on the edge of her bed with her underpants pulled down.  A greasy substance had been rubbed on her buttocks, and her window was open.[2]  The area was searched.  Eventually, Woods, who was pacing and nervous while the police performed their duties, accompanied Officer Moody to the police station to provide a written statement.  Denise Martin also later went to the police station to provide a statement.  In his initial written statement, on a form titled VOLUNTARY STATEMENT (NOT UNDER ARREST), Woods stated that he left the facility after midnight, stayed home until 12:30, and then went back to work.  Shortly after Woods provided the written statement, Lieutenant Michael Martin returned from the facility and, with Officer Moody present, advised Woods of his Miranda rights.  According to Lieutenant Martin and Officer Moody, Woods understood these rights and Woods signed a written waiver.  Woods gave a tape-recorded statement, orally confessing to the incident.  He told police he put on latex gloves, entered the residents room from the outside, applied butter on the residents buttocks, and ultimately decided against raping her.  Woods said he was preparing to leave the room when Denise Martin tried to enter. 
Woods was arrested and charged with burglary and attempted sexual assault.  The grand jury formally charged Woods with burglary in the first-degree, attempted criminal sexual conduct in the first-degree, and attempted criminal sexual conduct in the third-degree.  The trial court held a pre-trial hearing to determine the voluntariness of the initial statements as well as the admissibility of the oral, audio-recorded statement.  The trial court determined that Woods was not in custody at the time he gave his written statement and, therefore, it was voluntarily given.  The court also found that Woods was properly advised of his Miranda rights and that he voluntarily waived those rights at the time he gave his oral, taped statement.  Thus, the court found that both the written and oral statements were admissible.   
The trial proceeded, and a jury convicted Woods of all three charges.  The trial court sentenced Woods to twenty-five years on the burglary charge and concurrent terms of twenty-five years for the attempted criminal sexual conduct in the first-degree and ten years for attempted criminal sexual conduct in the third-degree.  This appeal followed.
STANDARD OF REVIEW
The appellate court sits to review criminal cases for errors of law only.  State v. Wilson, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001).  This court is bound by the trial courts factual findings unless they are clearly erroneous.  Id. at 6, 545 S.E.2d at 829.  Our supreme court has stated:

This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. For instance, in order for a confession to be admissible, the State must prove a voluntary waiver of the defendants Miranda rights by a preponderance of the evidence.  On review, we are limited to determining whether the trial judge abused his discretion.  

Id. (citations omitted).  
This court does not take its own view of the preponderance of the evidence; rather, it must determine whether the trial courts ruling is supported by any evidence.  Wilson, 345 S.C. at 5, 545 S.E.2d at 829.  Likewise, the trial courts resolution of the issue of voluntariness of a statement will not be disturbed on appeal absent an error of law.  State v. Creech, 314 S.C. 76, 84, 441 S.E.2d 635, 639 (Ct. App. 1994).
LAW/ANALYSIS
Woods argues the trial court erred in admitting both his oral and written statements because he had not been advised of his Miranda rights when he gave his written statement and he never waived his Miranda rights when he gave his oral statement.  We consider whether Woods properly preserved the issues raised on appeal.  
The appellate court cannot consider issues that are raised for the first time on appeal.  State v. Morris, 307 S.C. 480, 485, 415 S.E.2d 819, 822 (Ct. App. 1991).  Where an objection and the ground therefor is not stated in the record, there is no basis for appellate review.  Id. at 485, 415 S.E.2d at 823.  Furthermore, a defendant cannot raise a ground for suppression for the first time on appeal.  See State v. Brannon, 347 S.C. 85, 89, 552 S.E.2d 773, 774 (Ct. App. 2001) (finding suppression issue not preserved where appellant failed to join in on his co-defendants objection and further failed to raise the suppression issue himself).
In addition, if the ruling was initially made in an in limine proceeding, an objection must be renewed when the evidence is admitted.  State v. Gagum, 328 S.C. 560, 564-65, 492 S.E.2d 822, 824 (Ct. App. 1997).  Failure to renew the objection precludes appellate review.  State v. Wannamaker, 346 S.C. 495, 499, 552 S.E.2d 284, 286 (2001). 
After the jury was selected in this case, the State moved to have a Jackson v. Denno[3] hearing to determine the admissibility of Woods statements.  Both Lieutenant Martin and Officer Moody testified that Woods understood his Miranda rights and the rights he was waiving by giving a statement.  Woods did not argue that the statements were taken in violation of his Miranda rights, and he failed to move to suppress the statements.  The State later introduced both statements during the trial without objection.    
Woods raises these issues for the first time on appeal.  His failure to object to the admissibility of the statements at trial renders the issues not preserved.  See State v. Dunbar, 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) (holding that an issue must be raised to and ruled upon by the trial court in order for it to be preserved for appellate review).  Accordingly, we may not address them.  
CONCLUSION
The issues Woods raises are not properly before this court.  Accordingly, Woods convictions and sentences are
 AFFIRMED.
HEARN, C.J., BEATTY and SHORT, JJ., concur.

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).  
[2]  The adult resident had the intellectual abilities of a one to one-and-a-half year old and could not perform daily activities without assistance.  She was non-verbal and thus unable to tell police what had happened to her.  
[3]  Jackson v. Denno, 378 U.S. 368 (1964).