**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Christopher P. Cooper, Appellant.

Appellate Case No. 2021-000457

———————

Appeal From Lexington County
D. Craig Brown, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-294
Heard March 12, 2024 – Filed August 14, 2024

———————

**AFFIRMED**

———————

Elizabeth Anne Franklin-Best, of Elizabeth
Franklin-Best, P.C., of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General Mark Reynolds Farthing,
both of Columbia, for Respondent.

———————

**PER CURIAM:** Christopher P. Cooper appeals his convictions for first-degree
burglary, first-degree criminal sexual conduct, armed robbery, kidnapping,
conspiracy, and possession of a weapon during the commission of a violent crime.
On appeal, Cooper argues the circuit court erred in (1) excluding evidence the

victim approached and requested money from his brother, (2) not suppressing statements he made to law enforcement that were involuntary, and (3) allowing the victim to testify she recognized Cooper's voice at a bond hearing.  We affirm.

## FACTS AND PROCEDURAL HISTORY

A Lexington County grand jury indicted Cooper for first-degree burglary, first-degree criminal sexual conduct, armed robbery, kidnapping, conspiracy, and possession of a weapon during the commission of a violent crime.  The charges arose out of a home invasion that occurred on July 27, 2017, in which Cooper and his cousin were accused of breaking into the home of Victim, stealing over $1,000, and sexually assaulting Victim.

Before the trial, the State moved to suppress any allegations that Victim solicited a bribe from Cooper's brother, Earle Cooper (Brother).  According to the State, Brother visited Victim at the strip club where she worked approximately a year after the July 2017 incident.  Brother and Victim recognized each other.  When Brother offered Victim money, Victim attempted to have Brother removed from the strip club and contacted the solicitor's office to inform them Brother had contacted her and offered her money.  Victim later went to Brother's place of employment and recorded a conversation with Brother in which he explained he wanted to help her.  Victim believed Brother sincerely wanted to help, so she informed the solicitor's office that she was not concerned about him contacting her and continued to meet with him.  Based on their meetings, Brother claimed Victim indicated she would change her story or drop the charges against Cooper in exchange for money.  The State denied Victim ever offered to change her story or drop the charges against Cooper.  The meeting between Brother and Victim ceased when they both reported the meeting to law enforcement.

In Brother's version of events, he went to the strip club where Victim worked and left her a tip without knowing her identity.  Afterwards, he was surprised to find a note from her at his work asking him to call her.  Discussions occurred about money between Brother and Victim, but Brother contacted the solicitor's office because he did not know how to proceed.  The solicitor's office contacted the West Columbia Police Department about the alleged bribery, and the Lexington County Sheriff's Department investigated the allegations.  Cooper argued the issue presented a question of fact for the jury regarding Victim's character.  He cited *State v. Finley*,[1] in which our supreme court ruled a tape-recorded conversation

---

[1] 300 S.C. 196, 387 S.E.2d 88 (1989).

should have been admitted into evidence because it was relevant to impeach the victim on a material issue.

When the circuit court asked if Victim ever offered to change her story or drop the charges, the State again denied that ever occurred. The circuit court stated it saw this issue as "a double-edged sword" for Cooper because the jury could interpret an attempt to pay Victim to change her testimony or drop the charges as an admission of his guilt. The circuit court also stated it thought bringing in evidence of the alleged bribery could divert the jury from the true substance of the case. After considering the issue overnight, the circuit court refused to allow Cooper to introduce evidence of the alleged bribery. The circuit court stated it believed *Finley* was distinguishable from this case because Brother did not contact Victim until a year after the crimes, no recorded conversation of Victim attempting to extort Brother existed, Cooper confessed to the crimes, and Victim notified the solicitor's office as soon as Brother contacted her. The circuit court also considered the case of *Vanover v. State*,[2] finding it was "factually contrary" to the present case because it revolved around the admission of a prior allegation of the victim in that case. The circuit court noted *Vanover* stated a court could exclude evidence that could lead to "a trial within a trial" and might "confuse the issues and mislead the jury," which the circuit court stated "could very well result in this case" if the evidence of the alleged bribery was admitted. The circuit court stated it would allow Cooper to proffer testimony on the matter at the appropriate time.

Before the trial began, the circuit court also conducted a hearing to determine the admissibility of incriminating out-of-court statements Cooper made to law enforcement. During the hearing, West Columbia Police Department Investigator Jody Lee Putney testified they found Cooper at his place of work and Cooper voluntarily agreed to go to the police department for an interview. Investigator Putney stated they informed Cooper of his *Miranda*[3] rights when he arrived at the police department, and he verified his signature appeared as that of the witness on the form Cooper signed waiving his *Miranda* rights (the waiver form). On cross-examination, Investigator Putney stated he did not remember Cooper requesting an attorney for the interview.

---

[2] 433 S.C. 31, 40, 856 S.E.2d 160, 165 (Ct. App. 2021) (finding testimony about sexual abuse victim's allegedly false allegations of inappropriate conduct against a teacher was not admissible under Rule 404(b), SCRE, as prior bad act when prosecuting defendant for criminal sexual conduct with a minor).
[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Investigator Christopher Morris testified the West Columbia Police Department did not record suspect interviews. He stated he began the interview with Cooper by having him sign the waiver form. Investigator Morris stated Cooper did not appear under the influence of any drugs or alcohol during the interview, he did not notice any physical or mental disabilities as he talked to Cooper, and Cooper seemed to understand what Morris said to him. He testified he thought the interview probably lasted less than two hours and Cooper never requested to make a phone call or use the bathroom during the interview. Investigator Morris denied threatening Cooper before providing *Miranda* warnings or promising him anything to waive his *Miranda* rights. He stated he read the waiver form to Cooper, and Cooper "waived his rights, signed and dated it." He stated Cooper described the events of July 27, 2017, during the interview. Investigator Morris testified Cooper never asked for an attorney and gave his verbal and written statement freely and voluntarily. Investigator Bruce Wade also testified he was present in the interview when Cooper gave his statement. He stated Cooper gave his statement voluntarily and never requested an attorney during the interview.

Cooper testified he asked for an attorney three times: on the drive to the police department before his interview, when Investigator Morris began questioning him in the interview room, and when officers allegedly threatened him during his interview. Cooper testified he was read his rights after giving his statement. On cross-examination, Cooper stated he graduated high school and went to college for one year. He agreed he initialed and signed the waiver form and wrote the statement given to police. Cooper initially denied ever having been arrested before, but he admitted he was arrested in 2016 for trafficking cocaine and possession of a weapon during a violent crime when presented with evidence of the arrest. He also acknowledged he signed the waiver form and statement during an August 2016 interview regarding the previous arrest.

The circuit court considered the totality of the circumstances, stating the officers testified no threats or promises were made to Cooper, nothing was withheld from Cooper during the interview, and the interview lasted two hours at a normal interview location. The circuit court found Cooper's age, education, mental or physical condition, and conduct in court did not cause any concern. The circuit court found the officers testified Cooper was advised of his rights before being questioned, Cooper signed the waiver form, and Cooper was literate. The circuit court acknowledged Cooper and the officers gave conflicting testimony about the interview process, but it noted Cooper denied having been previously arrested during his testimony even though he had been. Based on the totality of the circumstances, the circuit court held Cooper's statement was freely, voluntarily,

knowingly, and intelligently made, and therefore it was admissible as evidence. During the trial, the officers testified that Cooper freely and voluntarily made his statement to police after signing the waiver form, and the circuit court admitted Cooper's written statement and signed waiver form into evidence over Cooper's renewed objection.

At trial, Victim testified she could distinguish between the voices of the two men who broke into her home and assaulted her. She stated she heard the voice of one of the men later during a bond court hearing. Cooper objected to the testimony and requested an in-camera hearing on the matter, which the circuit court allowed. Cooper argued Victim's testimony should not be admitted because no procedure had been followed to determine the accuracy of her voice identification. The circuit court stated under Rule 901, SCRE, Victim "may be able to authenticate it, based upon her hearing his voice there in court," and Cooper's counsel replied, "All right, sir." The circuit court then read Rule 901(b)(5), SCRE, stating voice identification was allowed, and Cooper's counsel stated, "You're correct on what you're reading." When the circuit court stated it believed Victim could authenticate Cooper's voice under Rule 901(b)(5), Cooper's counsel replied, "All right," and when the circuit court asked if he disagreed with that reading of the rule, Cooper's counsel replied, "I think that's exactly what that rule says."

The State indicated it intended to ask Victim if she could identify whether the voice she heard belonged to anyone in the courtroom, and Cooper stated he did not believe a foundation had been established for that question. The circuit court responded that Victim could testify she heard the voice in the courtroom, and could then identify the person with the voice. Cooper's counsel responded "that would be accurate, Your Honor, if she says that." After the jury returned, Victim testified she was able to distinguish the voices of the two men who broke into her house and attacked her from each other, and that she heard the voice of one of the men in bond court. Victim then identified Cooper as the man she recognized as her assailant based on his voice at bond court. Victim stated there was no question in her mind that the voice she heard at bond court was the voice of the man she heard on July 27, 2017. Cooper did not object to the identification.

On cross-examination, Cooper's counsel asked Victim when she heard Cooper in bond court. Victim testified she heard Cooper's voice at bond court when the judge asked if he had any remarks. She stated she recognized his voice at bond court because he spoke to her multiple times throughout the night of July 27, 2017. On redirect examination, Victim again identified Cooper as the person whose voice she recognized as that of one of her assailants.

Cooper proffered Brother's testimony regarding Victim's alleged bribery outside the presence of the jury. Brother testified he met Victim at a strip club when she sat down next to him and began talking. He stated when they realized who the other was, Victim walked to the back of the strip club and Brother left. Brother stated the next day Victim left a note with her name and phone number on his desk at work. When he called the number, Victim met him at his place of work. Brother recalled Victim telling him she needed $25,000 and that she would help Cooper. Brother stated he told Victim he could probably get her $10,000 and Victim told him to call her when he had the money. Brother later agreed to meet Victim's husband. Brother testified Victim's husband told him he was "real connected" and "could have something done to" Brother, but that if Brother gave them $10,000, they would go away. He stated when he met Victim again she showed him an email she sent to "victim's advocate people" stating she did not "feel harmed" by Brother. Brother testified he called law enforcement to see if he should give Victim some of the money, but they never responded to his calls. He stated the Lexington County Sheriff's Department began investigating and took a formal statement from him and his contact with Victim ended. Brother testified he believed Victim was "[t]rying to get some money out of the situation."

On cross-examination, Brother acknowledged Victim approached him at the strip club to thank him for giving her a tip. Brother agreed that, in the recording from his meeting with Victim at his workplace, Victim told him she lost her house, was raped, was stolen from, and felt unsafe going to work because of him coming into the club. Brother acknowledged he told Victim he had fifty people doing whatever he told them to do. He also acknowledged he told Victim he could get her $10,000 and that it was his idea to meet with her husband. The circuit court stated its ruling regarding the evidence related to the alleged bribe remained the same after hearing Brother's testimony.

The jury found Cooper guilty as indicted. The circuit court sentenced Cooper to life imprisonment for first-degree burglary, thirty years' imprisonment for first-degree criminal sexual conduct, thirty years' imprisonment for armed robbery, thirty years' imprisonment for kidnapping, and five years' imprisonment for conspiracy.[4] This appeal followed.

---

[4] The circuit court did not impose a sentence for possession of a weapon during the commission of a violent crime because it imposed a sentence of life imprisonment without parole for first-degree burglary. S.C. Code Ann. § 16-23-490(A) (2015) (stating the five-year sentence for possession of a weapon during the commission

**STANDARD OF REVIEW**

"An appellate court reviews a trial court's evidentiary rulings under an abuse of discretion standard and gives great deference to the trial court's ruling." *State v. Davis*, 437 S.C. 93, 96, 876 S.E.2d 321, 322 (Ct. App. 2022). "A trial court abuses its discretion when its conclusions either lack evidentiary support or are premised on an error of law." *Id.*

**LAW AND ANALYSIS**

**I.      Alleged Bribery**

Cooper argues the circuit court erred by excluding evidence of bribery or extortion committed by Victim. He maintains the evidence should have been admitted because it was probative of Victim's credibility and admissible to impeach her pursuant to Rule 404(b), SCRE.[5]

We hold this issue is not preserved for appellate review because Cooper failed to argue whether the evidence should have been admitted under Rule 403, SCRE, which was the basis of the circuit court's ruling. The circuit court stated it believed the evidence should be excluded because "it might confuse the issues and mislead the jury," as is permissible reasoning under Rule 403. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Because Cooper failed to address this line of reasoning, instead only arguing the evidence should have been admitted under Rule 404(b), the circuit court's ruling is the law of the case. *See State v. Black*, 400 S.C. 10, 28, 732 S.E.2d 880, 890 (2012) (holding an unchallenged ruling, right or wrong, becomes the law of the case and will not be considered by the appellate court); *State v. Fripp*, 396 S.C. 434, 441, 721 S.E.2d 465, 468 (Ct. App. 2012) (concluding the appellant's failure to challenge the circuit court's ruling in his appellate brief rendered the unchallenged ruling the law of the case); *see also*

---

of a violent crime "does not apply in cases where the death penalty or a life sentence without parole is imposed for the violent crime").

[5] Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.").

Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

## II.     Statements to Law Enforcement

Cooper argues the circuit court erred by admitting into evidence his statements to law enforcement. He contends the statements should have been suppressed because he invoked his right to counsel and the State failed to show his confession was knowingly and voluntarily made. We disagree.

We hold the circuit court did not err in admitting Cooper's verbal and written confession into evidence. *See State v. Miller*, 441 S.C. 106, 119, 893 S.E.2d 306, 313 (2023) ("[T]he question of voluntariness [of a criminal defendant's statement] presents a mixed question of law and fact."); *id.* (holding appellate courts "review the trial court's factual findings regarding voluntariness for any evidentiary support[,]" but clarifying "the ultimate legal conclusion—whether, based on those facts, a statement was voluntarily made—is a question of law subject to de novo review"). We hold the testimony offered established Cooper was informed of his rights prior to being questioned and that he understood his rights. *See State v. Saltz*, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001) ("If a defendant was advised of his *Miranda* rights, but nevertheless chose to make a statement, the 'burden is on the State to prove by a *preponderance of the evidence* that his rights were voluntarily waived.'" (quoting *State v. Washington*, 296 S.C. 54, 370 S.E.2d 611 (1988))). Investigators Putney and Morris, who were present at the beginning of Cooper's interview, both testified *Miranda* rights were given to Cooper before he gave his verbal and written statements to police. Further, the circuit court was presented with Cooper's waiver form and written statement, which Cooper admitted he signed. Cooper also had some experience with law enforcement in the past, as evidenced by his testimony admitting he signed a waiver form during an August 2016 interview regarding a previous arrest. Accordingly, we hold the State provided evidence Cooper was informed of his rights and understood his rights prior to giving his statements to law enforcement.

Furthermore, we find the circuit court did not err by concluding Cooper voluntarily confessed to law enforcement. *See State v. Pittman*, 373 S.C. 527, 566, 647 S.E.2d 144, 164 (2007) ("In determining whether a confession was given 'voluntarily,' [the appellate court] must consider the totality of the circumstances surrounding the defendant's giving the confession."); *id.* ("[T]he totality of the circumstances includes 'the youth of the accused, his lack of education or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of

physical punishment such as the deprivation of food or sleep.'" (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973))). As the circuit court stated in its ruling, Cooper was an adult with one year of college education and prior criminal history, he was questioned for less than two hours, law enforcement did not deprive him of anything or subject him to any threats or promises during the interview, and the interrogation occurred in a routine location for an interview. Investigators Putney, Morris, and Wade all testified Cooper gave his statements voluntarily and was not threatened or promised anything during his interview.

Additionally, we hold the law enforcement officers' testimony provided evidence Cooper made the statement without invoking his right to counsel. *See State v. Wannamaker*, 346 S.C. 495, 499, 552 S.E.2d 284, 286 (2001) ("If a suspect invokes her right to counsel, police interrogation must cease unless the suspect herself initiates further communication with police. However, police officers are not required to cease questioning a suspect unless her request for counsel is unambiguous." (citations omitted)). We acknowledge that Cooper testified he invoked his right to counsel, but we hold Cooper's testimony that he had no previous arrest when he had been arrested in the past placed his credibility at issue, and the circuit court did not err in believing the law enforcement officers' testimony over Cooper's testimony. *See State v. Middleton*, 295 S.C. 318, 322, 368 S.E.2d 457, 459 (1988) (finding the trial court did not err in refusing to suppress a statement and "properly submitted the conflicting evidence on the issue of voluntariness for the jury's consideration"). Accordingly, we hold the circuit court did not err in admitting the evidence of Cooper's statement to law enforcement when the facts presented showed the statements were voluntarily made. Therefore, we affirm on this issue.

### III. Voice Identification

Cooper argues the circuit court erred by permitting Victim to testify she recognized his voice at the bond hearing as the voice of one of her assailants. He contends the circuit court erred in admitting the identification evidence because the identification procedure was unnecessarily suggestive and conducive to misidentification because it occurred at his bond hearing.

We hold this issue was not preserved for appellate review because Cooper acquiesced to the circuit court's ruling regarding the admissibility of the voice identification. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]. Issues not raised and ruled upon in the trial court will not be considered on appeal."); *State v. Mitchell*, 330 S.C.

189, 195, 498 S.E.2d 642, 645 (1998) ("Because counsel acquiesced in the judge's limitation of his cross-examination, and made no other objections regarding wanting the criminal files, Appellant cannot now complain about this issue."). Cooper objected to Victim's voice identification of him, but when the circuit court stated it believed the identification was admissible pursuant to Rule 901(b)(5), SCRE,[6] Cooper responded, "All right," and "I think that's exactly what that rule says." Cooper also agreed Victim could identify him based on his voice if the State asked if she heard the voice in the courtroom. Cooper made no objection to Victim's voice identification of him during her testimony before the jury. For these reasons, we hold Cooper waived this issue and it is therefore not preserved for appellate review. *See Ex parte McMillan*, 319 S.C. 331, 335, 461 S.E.2d 43, 45 (1995) (holding an issue procedurally barred when the party conceded the issue at trial).

**CONCLUSION**

Based on the forgoing, Cooper's convictions are

**AFFIRMED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**

---

[6] Rule 901(b)(5), SCRE (providing a voice may be identified "whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker").